FILED

ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
PAUL G. STERN (Cal. State Bar No. 162734)
Assistant United States Attorney
Senior Litigation Counsel, Major Frauds
   1100 United States Courthouse
   312 North Spring Street
   Los Angeles, California 90012
   Telephone: (213) 894-0715
   Facsimile: (213) 894-6269
   E-mail: paul.stern@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

2011 AUG -5 PM 3: 58

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CR No. CR11 0762 |
|---|---|---|
| Plaintiff, | ) | PLEA AGREEMENT FOR DEFENDANT |
| v. | ) | JANETH BREWER |
| JANETH BREWER, | ) | |
| Defendant. | ) | |

1.   This constitutes the plea agreement between JANETH
BREWER ("defendant") and the United States Attorney's Office for
the Central District of California ("the USAO") in the above-
captioned case.  This agreement is limited to the USAO and cannot
bind any other federal, state, local, or foreign prosecuting,
enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a) Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a one-count information in the form attached to this agreement as Exhibit A or a substantially similar form.

b) Not contest facts agreed to in this agreement.

c) Abide by all agreements regarding sentencing factors contained in this agreement.

d) Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e) Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f) Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g) Make restitution at or before the time of sentencing, unless defendant lacks the ability to pay and submits a completed financial statement to the USAO prior to sentencing, and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

h) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and submits a completed financial statement (form OBD-500) to the

1  USAO prior to sentencing.

2      3.   Defendant further agrees to cooperate fully with the

3  USAO, the Federal Bureau of Investigation, and, as directed by

4  the USAO, any other federal, state, local, or foreign

5  prosecuting, enforcement, administrative, or regulatory

6  authority.  This cooperation requires defendant to:

7          a)   Respond truthfully and completely to all questions

8  that may be put to defendant, whether in interviews, before a

9  grand jury, or at any trial or other court proceeding.

10         b)   Attend all meetings, grand jury sessions, trials

11 or other proceedings at which defendant's presence is requested

12 by the USAO or compelled by subpoena or court order.

13         c)   Produce voluntarily all documents, records, or

14 other tangible evidence relating to matters about which the USAO,

15 or its designee, inquires.

16     4.   For purposes of this agreement: (1) "Cooperation

17 Information" shall mean any statements made, or documents,

18 records, tangible evidence, or other information provided, by

19 defendant pursuant to defendant's cooperation under this

20 agreement or pursuant to the letter agreements previously entered

21 into by the parties dated September 10, 2007 and May 4, 2011

22 ("the Letter Agreements"); and (2) "Plea Information" shall mean

23 any statements made by defendant, under oath, at the guilty plea

24 hearing and the agreed to factual basis statement in this

25 agreement.

26                    THE USAO'S OBLIGATIONS

27     5.   The USAO agrees to:

28         a) Not contest facts agreed to in this agreement.

1  b) Abide by all agreements regarding sentencing factors

2  contained in this agreement.

3  c) At the time of sentencing, provided that defendant

4  demonstrates an acceptance of responsibility for the offense up

5  to and including the time of sentencing, recommend a two-level

6  reduction in the applicable Sentencing Guidelines offense level,

7  pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary,

8  move for an additional one-level reduction if available under

9  that section.

10  d) To recommend that defendant be sentenced at the low

11  end of the applicable Sentencing Guidelines range provided that

12  the total offense level as calculated by the Court (prior to any

13  departure for cooperation) is 19 or higher and provided that the

14  Court does not depart downward in offense level or criminal

15  history category (except pursuant to, and to the extent requested

16  in, a motion by the USAO for a downward departure under U.S.S.G.

17  § 5K1.1).  Notwithstanding its agreement to recommend the low end

18  of the Sentencing Guidelines range, the USAO is free to recommend

19  any conditions of confinement, including imprisonment, if the

20  total offense level falls within Zone B or C of the sentencing

21  table.

22  6.   The USAO further agrees:

23  a)   Not to offer as evidence in its case-in-chief in

24  the above-captioned case or any other criminal prosecution that

25  may be brought against defendant by the USAO, or in connection

26  with any sentencing proceeding in any criminal case that may be

27  brought against defendant by the USAO, any Cooperation

28  Information.  Defendant agrees, however, that the USAO may use

4

1  both Cooperation Information and Plea Information: (1) to obtain

2  and pursue leads to other evidence, which evidence may be used

3  for any purpose, including any criminal prosecution of defendant;

4  (2) to cross-examine defendant should defendant testify, or to

5  rebut any evidence offered, or argument or representation made,

6  by defendant, defendant's counsel, or a witness called by

7  defendant in any trial, sentencing hearing, or other court

8  proceeding; and (3) in any criminal prosecution of defendant for

9  false statement, obstruction of justice, or perjury.

10        b)   Not to use Cooperation Information against

11 defendant at sentencing for the purpose of determining the

12 applicable guideline range, including the appropriateness of an

13 upward departure, or the sentence to be imposed, and to recommend

14 to the Court that Cooperation Information not be used in

15 determining the applicable guideline range or the sentence to be

16 imposed.  Defendant understands, however, that Cooperation

17 Information will be disclosed to the probation office and the

18 Court, and that the Court may use Cooperation Information for the

19 purposes set forth in U.S.S.G § 1B1.8(b) and for determining the

20 sentence to be imposed.

21        c)   In connection with defendant's sentencing, to

22 bring to the Court's attention the nature and extent of

23 defendant's cooperation.

24        d)   If the USAO determines, in its exclusive judgment,

25 that defendant has both complied with defendant's obligations

26 under paragraphs 2 and 3 above and provided substantial

27 assistance to law enforcement in the prosecution or investigation

28 of another ("substantial assistance"), to move the Court pursuant

1   to U.S.S.G. § 5K1.1 to fix an offense level and corresponding
2   guideline range below that otherwise dictated by the sentencing
3   guidelines, and to recommend a term of imprisonment within this
4   reduced range.

5               DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION
6       7.   Defendant understands the following:
7            a)   Any knowingly false or misleading statement by
8   defendant will subject defendant to prosecution for false
9   statement, obstruction of justice, and perjury and will
10  constitute a breach by defendant of this agreement.
11           b)   Nothing in this agreement requires the USAO or any
12  other prosecuting, enforcement, administrative, or regulatory
13  authority to accept any cooperation or assistance that defendant
14  may offer, or to use it in any particular way.
15           c)   Defendant cannot withdraw defendant's guilty plea
16  if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1
17  for a reduced guideline range or if the USAO makes such a motion
18  and the Court does not grant it or if the Court grants such a
19  USAO motion but elects to sentence above the reduced range.
20           d)   At this time the USAO makes no agreement or
21  representation as to whether any cooperation that defendant has
22  provided or intends to provide constitutes or will constitute
23  substantial assistance.  The decision whether defendant has
24  provided substantial assistance will rest solely within the
25  exclusive judgment of the USAO.
26           e)   The USAO's determination whether defendant has
27  provided substantial assistance will not depend in any way on
28  whether the government prevails at any trial or court hearing in

6

which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

## NATURE OF THE OFFENSE

8.   Defendant understands that for defendant to be guilty of the crime of conspiracy charged in the information, in violation of Title 18, United States Code, Section 371, the following must be true:

First, beginning as early as December 2005, and ending on or about September 2007, there was an agreement between two or more persons: (1) to engage in a scheme to commit loan fraud, in violation of Title 18, United States Code, Section 1014; and (2) to engage in a scheme to commit wire fraud, in violation of Title 18, United States Code, Section 1343;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

In order to be guilty of a violation of Title 18, United States Code, Section 1014, the following must be true:

First, the defendant made a false statement or report to a financial institution the deposits of which were insured by the FDIC;

Second, the defendant made the false statement or report knowing that it was false;

Third, the defendant did so for the purpose of influencing in any way the action of the federally insured financial

7

1  institution.

2      In order to be guilty of a violation of Title 18, United

3  States Code, Section 1343, the following must be true:

4      First, defendant knowingly participated in a scheme to

5  defraud his victims to obtain money or property by means of false

6  or fraudulent pretenses, representations or promises;

7      Two, defendant's statements and actions in furtherance of

8  the scheme were material, that is, they had a natural tendency to

9  influence a person to part with money or property;

10      Three, defendant acted with intent to defraud; and

11      Fourth, defendant used, or caused someone to use, interstate

12  wires in furtherance of the fraudulent scheme.

13      Defendant admits that defendant is, in fact, guilty of the

14  offense of conspiracy to commit loan and wire fraud as set forth

15  in the attached information.

16                    PENALTIES AND RESTITUTION

17      9.  Defendant understands that the statutory maximum

18  sentence that the Court can impose for a violation of Title 18,

19  United States Code, Section 371 is: 5 years imprisonment; a 3-

20  year period of supervised release; a fine of $250,000 or twice

21  the gross gain or gross loss resulting from the offense,

22  whichever is greatest; and a mandatory special assessment of

23  $100.

24      10.  Defendant understands that defendant will be required

25  to pay full restitution to the victims of the offense.  Defendant

26  agrees that, in return for the USAO's compliance with its

27  obligations under this agreement, the amount of restitution is

28  not restricted to the amount alleged in the count to which

defendant is pleading guilty but may include losses arising from all relevant conduct encompassed by that charge.  The parties currently believe that the applicable amount of restitution falls somewhere between $1 million and $2.5 million, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.  Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated

1  collateral consequences will not serve as grounds to withdraw
2  defendant's guilty plea.

3       13.   Defendant understands that, if defendant is not a
4  United States citizen, the felony conviction in this case may
5  subject defendant to removal, also known as deportation, which
6  may, under some circumstances, be mandatory.  The court cannot,
7  and defendant's attorney also may not be able to, advise
8  defendant fully regarding the immigration consequences of the
9  felony conviction in this case.  Defendant understands that by
10 entering a guilty plea defendant waives any claim that unexpected
11 immigration consequences may render defendant's guilty plea
12 invalid.

FACTUAL BASIS

14      14.   Defendant and the USAO agree to the statement of facts
15 attached as Exhibit B to this agreement.  Defendant and the USAO
16 agree that this statement of facts is sufficient to support a
17 plea of guilty to the charge described in this agreement and to
18 establish the Sentencing Guidelines factors set forth in
19 paragraph 16 below, but is not meant to be a complete recitation
20 of all facts relevant to the underlying criminal conduct or all
21 facts known to either party that relate to that conduct.

SENTENCING FACTORS

23      15.   Defendant understands that in determining defendant's
24 sentence the Court is required to consider the factors set forth
25 in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence
26 and sentencing range established under the Sentencing Guidelines.
27 Defendant understands that the Sentencing Guidelines are advisory
28 only, that defendant cannot have any expectation of receiving a

sentence within the Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

16.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level : | 6 | U.S.S.G. § 2B1.1(a)(2) |
| Specific Offense Characteristics: | | |
| Loss | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |

Subject to the previous sentence and paragraphs 5(c) and 5(d) above and 25 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments or departures, other than a downward departure pursuant to § 5K1.1, relating to defendant's offense level be imposed.   Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

17.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

1    b) The right to a speedy and public trial by jury.

2    c) The right to the assistance of an attorney at trial,

3 including the right to have the Court appoint an attorney to

4 represent defendant at trial.  Defendant understands, however,

5 that, despite defendant's guilty plea, defendant retains the

6 right to be represented by an attorney -- and, if necessary, to

7 have the Court appoint an attorney if defendant cannot afford one

8 -- at every other stage of the proceeding.

9    d) The right to be presumed innocent and to have the

10 burden of proof placed on the government to prove defendant

11 guilty beyond a reasonable doubt.

12    e) The right to confront and cross-examine witnesses

13 against defendant.

14    f) The right to testify on defendant's own behalf and

15 present evidence in opposition to the charges, including calling

16 witnesses and subpoenaing those witnesses to testify.

17    g) The right not to be compelled to testify, and, if

18 defendant chose not to testify or present evidence, to have that

19 choice not be used against defendant.

20    h) Any and all rights to pursue any affirmative

21 defenses, Fourth Amendment or Fifth Amendment claims, and other

22 pretrial motions that have been filed or could be filed.

23                    <u>WAIVER OF APPEAL OF CONVICTION</u>

24    18.   Defendant understands that, with the exception of an

25 appeal based on a claim that defendant's guilty plea was

26 involuntary, by pleading guilty defendant is waiving and giving

27 up any right to appeal defendant's conviction on the offense to

28 which defendant is pleading guilty.

1    LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

2        19.  Defendant agrees that, provided the Court imposes a

3    total term of imprisonment of no more than 30 months, defendant

4    gives up the right to appeal all of the following: (a) the

5    procedures and calculations used to determine and impose any

6    portion of the sentence; (b) the term of imprisonment imposed by

7    the Court; (c) the fine imposed by the court, provided it is

8    within the statutory maximum; (d) the term of probation or

9    supervised release imposed by the Court, provided it is within

10   the statutory maximum; (e) the restitution order imposed by the

11   Court, as long as it does not exceed $2 million; and (f) any of

12   the following conditions of probation or supervised release

13   imposed by the Court: the standard conditions set forth in

14   General Orders 318, 01-05, and/or 05-02 of this Court; and the

15   drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and

16   3583(d).

17       20.  The USAO agrees that, provided (a) all portions of the

18   sentence are at or below the statutory maximum specified above

19   and (b) the Court imposes a term of imprisonment of no less than

20   30 months, the USAO gives up its right to appeal any portion of

21   the sentence, with the exception that the USAO reserves the right

22   to appeal the following: (a) the amount of restitution ordered if

23   the amount is less than $1 million.

24   RESULT OF WITHDRAWAL OF GUILTY PLEA

25       21.  Defendant agrees that if, after entering a guilty plea

26   pursuant to this agreement, defendant seeks to withdraw and

27   succeeds in withdrawing defendant's guilty plea on any basis

28   other than a claim and finding that entry into this plea

1  agreement was involuntary, then (a) the USAO will be relieved of

2  all of its obligations under this agreement, including in

3  particular its obligations regarding the use of Cooperation

4  Information; (b) in any investigation, criminal prosecution, or

5  civil, administrative, or regulatory action, defendant agrees

6  that any Cooperation Information and any evidence derived from

7  any Cooperation Information shall be admissible against

8  defendant, and defendant will not assert, and hereby waives and

9  gives up, any claim under the United States Constitution, any

10 statute, or any federal rule, that any Cooperation Information or

11 any evidence derived from any Cooperation Information should be

12 suppressed or is inadmissible; and (c) should the USAO choose to

13 pursue any charge that was either dismissed or not filed as a

14 result of this agreement, then (i) any applicable statute of

15 limitations will be tolled between the date of defendant's

16 signing of this agreement and the filing commencing any such

17 action; and (ii) defendant waives and gives up all defenses based

18 on the statute of limitations, any claim of pre-indictment delay,

19 or any speedy trial claim with respect to any such action, except

20 to the extent that such defenses existed as of the date of

21 defendant's signing this agreement.

22                    EFFECTIVE DATE OF AGREEMENT

23        22.   This agreement is effective upon signature and

24 execution of all required certifications by defendant,

25 defendant's counsel, and an Assistant United States Attorney.

26                    BREACH OF AGREEMENT

27        23.   Defendant agrees that if defendant, at any time after

28 the signature of this agreement and execution of all required

                                  14

certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

(a) If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

(b) The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c)    The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and

perjury based on any knowingly false or misleading statement by defendant.

d)     In any investigation, criminal prosecution, or civil, adminstrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

## COURT AND PROBATION OFFICE NOT PARTIES

24.  Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations, and (c) argue on

1  appeal and collateral review that the Court's Sentencing
2  Guidelines calculations are not error, although each party agrees
3  to maintain its view that the calculations in paragraph 16 are
4  consistent with the facts of this case.  While this paragraph
5  permits both the USAO and defendant to submit full and complete
6  factual information to the United States Probation Office and the
7  Court, even if that factual information may be viewed as
8  inconsistent with the facts agreed to in this agreement, this
9  paragraph does not affect defendant's and the USAO's obligations
10  not to contest the facts agreed to in this agreement.

11        26.  Defendant understands that even if the Court ignores
12  any sentencing recommendation, finds facts or reaches conclusions
13  different from those agreed to, and/or imposes any sentence up to
14  the maximum established by statute, defendant cannot, for that
15  reason, withdraw defendant's guilty plea, and defendant will
16  remain bound to fulfill all defendant's obligations under this
17  agreement.  Defendant understands that no one -- not the
18  prosecutor, defendant's attorney, or the Court -- can make a
19  binding prediction or promise regarding the sentence defendant
20  will receive, except that it will be within the statutory
21  maximum.

22                      NO ADDITIONAL AGREEMENTS

23        27.  Defendant understands that, except as set forth herein,
24  there are no promises, understandings, or agreements between the
25  USAO and defendant or defendant's attorney, and that no
26  additional promise, understanding, or agreement may be entered
27  into unless in a writing signed by all parties or on the record
28  in court.

1    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2         28.   The parties agree that this agreement will be

3    considered part of the record of defendant's guilty plea hearing

4    as if the entire agreement had been read into the record of the

5    proceeding.

6    AGREED AND ACCEPTED

7    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF CALIFORNIA
8
     ANDRÉ BIROTTE JR.
9    United States Attorney

10

11   _____            8-3-11
     PAUL G. STERN                       _____
12   Assistant United States Attorney    Date

13

14   _____            8.3.11
     JANETH BREWER                       _____
15   Defendant                           Date

16

17   _____            8-3-11
     RICHARD NAHIGIAN, ESQ.              _____
18   Attorney for Defendant              Date
     Janeth Brewer
19

20

21

22

23

24

25

26

27

28

                           18

```
 1              CERTIFICATION OF DEFENDANT
 2      I have read this agreement in its entirety.  I have had
 3  enough time to review and consider this agreement, and I have
 4  carefully and thoroughly discussed every part of it with my
 5  attorney.  I understand the terms of this agreement, and I
 6  voluntarily agree to those terms.  I have discussed the evidence
 7  with my attorney, and my attorney has advised me of my rights, of
 8  possible pretrial motions that might be filed, of possible
 9  defenses that might be asserted either prior to or at trial, of
10  the sentencing factors set forth in 18 U.S.C. § 3553(a), of
11  relevant Sentencing Guidelines provisions, and of the
12  consequences of entering into this agreement.  No promises,
13  inducements, or representations of any kind have been made to me
14  other than those contained in this agreement.  No one has
15  threatened or forced me in any way to enter into this agreement.
16  I am satisfied with the representation of my attorney in this
17  matter, and I am pleading guilty because I am guilty of the
18  charges and wish to take advantage of the promises set forth in
19  this agreement, and not for any other reason.
20
21  _____        8.3.11
    JANETH BREWER                      Date
22  Defendant
23
24
25
26
27
28
```

19

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Janeth Brewer's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.


_____          8-3-11
RICHARD NAHIGIAN                          Date
Attorney for Defendant
Janeth Brewer

1   <u>EXHIBIT A</u>: ATTACHED PROPOSED INFORMATION

EXHIBIT B

United States v. Janeth Brewer

STATEMENT OF FACTS

1.    Capitol Mortgage Services, Inc. ("CMS") was a real estate mortgage company with its main place of business in Santa Maria, California.  CMS was formed in July 2003 and operated at least through October 2008.  CMS provided real estate-related services to its clients, principally involving the preparation and submission of loan packages to banks or lending companies ("lenders") in order to enable CMS's clients to purchase or refinance residential properties.

2.    Defendant JANETH BREWER ("BREWER") was a licensed loan officer who worked at CMS from May 2004 through October 2007.  As a CMS loan officer, defendant BREWER would on occasion prepare loan applications containing false information on behalf of clients and submit those applications to lenders to facilitate the successful funding of CMS's clients' loans.

3.    Co-conspirator No. 1 ("CC-1") was a members' services officer who worked at CoastHills Federal Credit Union ("CFCU"), located in Santa Maria, California.  CC-1 assisted defendant BREWER in enabling CMS clients fraudulently to qualify for loans from lenders by providing false information regarding CMS's clients' funds on deposit in accounts maintained at CFCU, in exchange for which CC-1 received a fee from defendant BREWER.

4.    Co-conspirator No. 2 ("CC-2") was a tax-preparer and bookkeeper who operated a tax-preparation business in Santa Maria, California.  CC-2 assisted defendant BREWER in enabling CMS clients fraudulently to qualify for loans from lending banks

1   by agreeing falsely to verify the employment of certain CMS

2   clients at specified businesses in exchange for payment of a fee

3   by defendant BREWER, notwithstanding that CC-2 was not a tax

4   preparer for these clients and had no knowledge that they were

5   actually employed by the specified businesses.

6          5.   Beginning as early as December 2005, and continuing to

7   on or about September 2007, within the Central District of

8   California and elsewhere, defendant BREWER, together with CC-1

9   and CC-2, and others known and unknown to the United States

10  Attorney, knowingly combined, conspired, and agreed to commit the

11  following offenses against the United States: (1) to knowingly

12  make false statements or reports for the purpose of influencing,

13  in connection with a loan application, the actions of

14  institutions the accounts of which are insured by the Federal

15  Deposit Insurance Corporation, in violation of Title 18, United

16  States Code, Section 1014; and (2) to design, participate in, and

17  execute a scheme to defraud lenders of CMS's clients through the

18  use of interstate wires, in violation of Title 18, United States

19  Code, Section 1343.

20         6.   The object of the conspiracy was carried out, and was to

21  be carried out, in substance, as follows:

22              a.  On certain occasions in which defendant BREWER

23  determined that a particular CMS client did not have sufficient

24  financial resources to qualify for a residential loan, defendant

25  BREWER would contact CC-1 and request that CC-1 provide a false

26  verification of bank deposits ("VOD") for that CMS client,

27  reflecting that the client had a specified amount of funds on

28  deposit at CFCU, when in fact the CMS client did not have the

1   specified amount of funds on deposit at CFCU.

2        b.   Pursuant to defendant BREWER's request, CC-1 would
3   create false VODs for particular clients of CMS and provide them
4   to defendant BREWER for inclusion with the loan application
5   materials submitted by defendant BREWER to the lenders.

6        c.   On certain occasions in which defendant BREWER
7   determined that a particular CMS client did not have the type of
8   employment that would enable them to qualify for a residential
9   loan, defendant BREWER would contact CC-2 and request that CC-2
10  provide a false verification of employment ("VOE"), reflecting
11  that the CMS client was employed at a business with a specified
12  job title, when in fact the CMS client was not employed in the
13  manner specified by the VOE.

14       d.   Pursuant to defendant BREWER's request, CC-2 would
15  create false VOEs for particular clients of CMS and provide them
16  to defendant BREWER for inclusion with the loan application
17  materials submitted by defendant BREWER to the lenders.

18       e.   Based on the submission of loan applications by
19  defendant BREWER on behalf of CMS clients containing false VODs
20  and VOEs provided to BREWER by CC-1 and CC-2, the lenders would
21  decide to fund these loans and would transmit the loan proceeds
22  through the use of interstate wires.

23       f.   When CC-1 and CC-2 were first contacted by the
24  lenders and by federal law enforcement in 2006-07 concerning
25  their role in preparing false VODs and VOEs, they concealed their
26  collaboration with defendant BREWER and initially denied ever
27  having created false VODs and VOEs.

28

OVERT ACTS

7.    In furtherance of the conspiracy and to accomplish its objects, defendant BREWER, together with CC-1 and CC-2, and others known and unknown to the United States Attorney, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

Overt Act No. 1: On or about January 3, 2006, defendant BREWER submitted a loan application on behalf of CMS client No. 1 and his wife to IndyMac Bank, a bank whose deposits were then insured by the FDIC, which falsely stated that CMS client no. 1 was the self-employed owner of an agricultural harvesting company for the past three years.

Overt Act No. 2: On or about February 22, 2006, defendant BREWER paid CC-2 a fee in order prepare a fraudulent letter verifying that CMS client no. 1 was a self-employed farmer operating an agricultural harvesting company for the past three years.

Overt Act No. 3: On or about March 2, 2006, defendant BREWER requested CC-1 to prepare a fraudulent VOD falsely stating that CMS client no. 1 and his wife had approximately $48,500 in their bank accounts at CFCU.

Overt Act No. 4: On or about March 2, 2006, CC-1 provided to defendant BREWER a fraudulent VOD falsely stating that CMS client no. 1 and his wife had $53,819 in their bank accounts at CFCU.

Overt Act No. 5: On or about July 6, 2006, defendant BREWER requested CC-1 to prepare a fraudulent VOD falsely stating

that CMS client no. 2 had $38,000 in her bank account at CFCU.

Overt Act No. 6: On or about July 6, 2006, CC-1 provided to defendant BREWER a fraudulent VOD falsely stating that CMS client no. 2 had $37,434 in her bank account at CFCU.

Overt Act No. 7: On or about July 19, 2006, defendant BREWER submitted a fraudulent VOD in support of CMS client no. 2's loan to IndyMac Bank, falsely stating that CMS client no. 2 had  $37,434 in his bank account at CFCU.

Overt Act No. 8: On or about August 3, 2006, defendant BREWER assured CMS client no. 1 and his wife that she would handle any problems arising from the use of a fraudulent VOE in connection with client no. 1 and his wife's loan application.

Overt Act No. 9: On or about August 18, 2006, defendant BREWER submitted a loan application on behalf of client no. 3 to Argent Mortgage, located in Orange, California, falsely stating that CMS client no. 3 had $25,000 in her bank account at CFCU.

Overt Act No. 10: On or about September 12, 2006, defendant BREWER requested CC-1 to prepare a fraudulent VOD falsely stating that CMS client no. 3 had approximately $15,000 in her bank account at CFCU.

Overt Act No. 11: On or out September 13, 2006, CC-1 provided to defendant BREWER a fraudulent VOD falsely stating that CMS client no. 3 had $14,987 in her bank account at CFCU.

Overt Act No. 12: On or about November 9, 2006, defendant BREWER requested CC-1 to prepare a fraudulent VOD falsely stating that CMS client no. 4 and his wife had over $8,500 in their bank account at CFCU.

Overt Act No. 13: On or about November 9, 2006, CC-1 provided to defendant BREWER a fraudulent VOD falsely stating that CMS client no. 4 and his wife had over $10,437 in their bank account at CFCU.

Overt Act No. 14: On or about November 20, 2006, defendant BREWER submitted a loan application on behalf of CMS client no. 4 and his wife to Central Coast One Stop Mortgage Group, Inc., located in Santa Maria, California, falsely stating that CMS client no. 4 and his wife had $10,437 in their bank account at CFCU.

<u>CERTIFICATE OF SERVICE</u>

I, <u>**YENI GOMEZ,**</u> declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **PLEA AGREEMENT FOR DEFENDANT JANETH BREWER**

**service was:**

[ ] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[X] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[ ] By hand delivery addressed as follows:

[ ] By facsimile as follows:

[ ] By email as follows:

[ ] By federal express as follows:

**Richard Nahigian**
**1122 E. Green St.**
**Pasadena, CA 91106-2516**

This Certificate is executed on August 5, 2011 at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

_____
YENI GOMEZ