# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | PRESENTENCE INVESTIGATION REPORT |
| | ) | |
| Janeth Brewer | ) | Docket No. CR11-00762-PSG |

**Prepared For:**      THE HONORABLE PHILIP S. GUTIERREZ
                       UNITED STATES DISTRICT JUDGE

**Assistant United States Attorney**          **Defense Counsel**

Paul G. Stern                                  Richard E. Nahigian (Retained)
1200 United States Courthouse                  Richard E. Nahigian Law Offices
312 North Spring Street                        1122 East Green Street
Los Angeles, CA 90012                          Pasadena, CA 91106
213-894-2434                                   626-683-3991


**Prepared by:**       Maytee Zendejas
                       United States Probation Officer
                       United States Courthouse
                       312 North Spring Street , 6th Floor
                       Los Angeles, CA  90012-4701
                       213-894-5597

**Sentence Date:**                    02/27/2012

**Offense:**       *Count 1:*         Conspiracy (18 U.S.C. §371);
                                      5 years imprisonment and/or $250,000 fine
                                      Class D Felony

**Release Status:**                   Released on 09/12/2011on $10,000 unsecured
                                      appearance bond with PSA supervision

**Detainers:**                        None


**Date Report Disclosed: JAN  17  2012**        **Date Parties Notified: JAN  17  2012**

| | |
|---|---|
| **Co-Defendants:** | None |
| **Related Cases:** | See Report |

**Defendant Identifying Data:**

| | |
|---|---|
| **Date of Birth:** | 08/14/1973 |
| **Age:** | 38 |
| **Race:** | White, Hispanic origin |
| **Sex:** | Female |
| **Social Security No.:** | 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 |
| **FBI No.:** | 630028MD4 |
| **Marshals No.:** | Pending |
| **Other ID Nos.:** | CII: A24246011<br>ARN: 019346076<br>CA DL: A9675465 |
| **Education:** | High School Graduate and Some College |
| **Marital Status:** | Single |
| **Dependents:** | 2 (daughters) |
| **Citizenship:** | Citizen of Mexico; Permanent U.S. Resident |
| **Legal Address:** | 2411 Divide Way<br>Santa Maria, CA 93458 |
| **Aliases:** | Janet Brewer Salazar |

*Restrictions on Use and Redisclosure of Presentence Investigation Report.* Disclosure of this Presentence Investigation Report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorists activities. If this Presentence Investigation Report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the Federal Judiciary and the Department of Justice that further redisclosure of the Presentence Investigation Report is prohibited without the consent of the sentencing judge.

# G U I D E L I N E   S U M M A R Y

**Case Name**: Janeth Brewer

**Docket No.**: CR11-00762-PSG

**Guideline Edition**: November 1, 2011

| | |
|---|---|
| BASE OFFENSE LEVEL:  Guideline: 2B1.1(a)(2) | 6 |
| SPECIFIC OFFENSE CHARACTERISTICS | +16 |
| ROLE IN THE OFFENSE | 0 |
| VICTIM ADJUSTMENT | 0 |
| OBSTRUCTION OF JUSTICE | 0 |
| ADJUSTED OFFENSE LEVEL | 22 |
|     MULTIPLE COUNT ADJUSTMENT | N/A |
|     CAREER OFFENDER/CRIM. LIVELIHOOD/ ARMED CAREER CRIMINAL/REPEAT SEX OFFENDER | N/A |
|     ACCEPTANCE OF RESPONSIBILITY | -3 |
| TOTAL OFFENSE LEVEL | 19 |
|     CRIMINAL HISTORY CATEGORY | I |

SENTENCING OPTIONS:

    GUIDELINE SENTENCE   <u>30</u> to <u>37</u> months

    SUPERVISED RELEASE   <u>1</u> to <u>3</u> years

    FINE              <u>$6,000</u> to <u>$60,000</u>

PSI 102
9/27/05

**PART A.  THE OFFENSE**

    **Charge(s) and Conviction(s)**

1. On September 19, 2011, before the Honorable Philip S. Gutierrez, Janeth Brewer (**Brewer**) pleaded guilty to the Single-Count Information in which she is solely named.

2. The information charges that from December 2005 through September 7, 2007, **Brewer**, and others known and unknown violated 18 U.S.C. §371 by knowingly conspiring to commit: (1) loan fraud, in violation of 18 U.S.C. § 1014, by making false statements or reports for the purpose of influencing, in connection with a loan application, the actions of institutions the accounts of which were then insured by the Federal Deposit Insurance Corporation; and (2) wire fraud, in violation of 18 U.S.C. § 1343, by designing, participating in, and executing a scheme to defraud lenders through the use of interstate wires.

3. The information further sets forth the means by which the conspiracy was to be accomplished and the overt acts done in furtherance of the conspiracy.

4. Pursuant to the written plea agreement between the Government and **Brewer**, the parties have stipulated to the following applicable Sentencing Guideline factors: a base offense level of six, pursuant to U.S.S.G. § 2B1.1(a)(2); and an enhancement for loss under U.S.S.G. § 2B1.1(b)(1)(I), based on the loss amount.

5. The parties agree not to seek, argue, or suggest in any way, that additional specific offense characteristics, adjustment, and departures under the Sentencing Guidelines are appropriate.

6. Brewer understands that she will be required to pay full restitution to the victims of the offense. Brewer agrees that the amount of restitution is not restricted to the amount alleged in the count to which Brewer is pleading guilty but may include losses arising from all relevant conduct encompassed by that charge. The parties believe that the applicable amount of restitution falls somewhere between $1 million and $2.5 million, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7. In exchange for Brewer's guilty plea, the Government conditionally agrees, at the time of sentencing, to recommend: (a) up to a three-level reduction in the offense level for acceptance of responsibility; and (b) that Brewer be sentenced at the low end of the applicable Sentencing Guidelines range provided that the total offense level as calculated by the Court is 19 or higher.

8. The parties agree to a limited mutual waiver of appeal.

9. Related Case

    CR11-00427-PSG - Imelda Sanchez: Trial scheduled on April 23, 2012.

**Pretrial Adjustment**

10. On September 12, 2011, Brewer was summoned to appear in Court. On that same day, she was released on a $10,000 unsecured appearance bond with Pretrial Service Agency (PSA) supervision.

11. According to the PSA, Brewer is presently in compliance with the terms and conditions of her release.

**The Offense Conduct**

12. Information regarding the offense was obtained from materials provided by the Assistant United States Attorney (AUSA) including: the investigative reports of the Federal Bureau of Investigation (FBI); the Indictment; and Brewer's Plea Agreement.

Background

13. Capitol Mortgage Services, Inc. (CMS), a real estate mortgage company, located in Santa Maria, California, operated from July 2003 to at least October 2008. CMS provided real estate services to its clients, principally involving the preparation and submission of loan packages to banks or lending companies in order to enable CMS's clients to purchase or refinance residential properties.

14. From May 2004 to October 2007, Brewer was employed at CMS as a licensed loan officer.

15. CMS employees obtained the assistance of co-conspirator number 1 (CC1), who was a members' services officer at CoastHills Federal Credit Union (CFCU) in Santa Maria, California and co-conspirator number 2 (CC2), who was a tax-preparer and bookkeeper and operated her tax-preparation business in Santa Maria, California.

Brewer's Conduct

16. From December 2005 to September 2007, Brewer prepared loan applications containing false information on behalf of CMS's clients (clients) who did not have sufficient financial resources to qualify for a loan and submitted those loan applications to lenders.

17. Brewer requested the assistance of CC1 and CC2 to fraudulently facilitate the successful funding of the clients' loans:

    a. CC1 would prepare a fraudulent Verification of Deposit (VOD) form for certain clients to provide false information regarding the clients' funds on deposit in accounts maintained at CFCU. In exchange, CC1 would receive a payment from Brewer.

    b. CC2 would falsely verify the employment of certain clients at specified businesses. In exchange, CC2 would receive a payment from Brewer. CC2 was

        not a tax preparer for these clients and had no knowledge that they were actually employed by the specified businesses.

18. To further carry out the scheme, Brewer listed her own personal P.O. Box address as the address of the fictitious business on the loan applications of the clients.

19. Brewer caused the victim lenders **$1,655,932 in actual losses** resulting from her false loan applications. Examples illustrating Brewer's conduct follow:

    *Client No. 1*

20. In December 2005, Brewer submitted a loan application to IndyMac. She made the following false statements in the loan application: a client was a self-employed farmer; and to make it appear as though the client's employment information was true Brewer used her personal P.O. Box address as the address of the client's employer.

21. On December 16, 2005, Brewer paid CC2 a fee to prepare a fraudulent letter verifying that the client was a self-employed farmer for two years.

22. Based on the false information on the loan application, the client received two loans from IndyMac, $368,000 and $92,000, which the client used to purchase a residence located at 603 West Edwards Street, in Santa Maria, California.

23. According to the case agent, the property was eventually foreclosed. As a result of the sale, IndyMac sustained a loss of $290,000.

    *Client No. 2*

24. On January 3, 2006, Brewer submitted a loan application on behalf of a client to IndyMac Bank, a bank whose deposits were then insured by the FDIC, which falsely stated that the client was the self-employed owner of an agricultural harvesting company for three years.

25. On February 22, 2006, Brewer paid CC2 a fee in order to prepare a fraudulent letter verifying that the client was a self-employed farmer operating an agricultural harvesting company for three years.

26. On March 2, 2006, Brewer asked CC1 to prepare a fraudulent VOD form to falsely state that the client had approximately $48,500 in their bank accounts at CFCU. On the same date, CC1 provided Brewer a fraudulent VOD falsely stating that the client had $53,819 in their bank accounts at CFCU.

27. On August 3, 2006, Brewer assured the client that Brewer would handle any problems arising from the use of a fraudulent verification of employment in connection with their loan application.

28. Based on the false information on the loan application, the client received two loans from IndyMac, $750,000 and $200,000, which the client used to purchase a residence located at 2530 Laurie Way, in Arroyo Grande, California.

29. According to the case agent, the property was eventually foreclosed. As a result of the sale, IndyMac sustained a loss of $324,000.

   *Client No. 3*

30. On July 6, 2006, Brewer asked CC1 to prepare a fraudulent VOD falsely stating that a client had $38,000 in her bank account at CFCU. On the same date, CC1 provided Brewer a fraudulent VOD falsely stating that the client had $37,434 in her bank account.

31. On July 19, 2006, Brewer submitted a fraudulent VOD in support of the client's loan to IndyMac Bank, falsely stating that the client had $37,434.

32. Based on the false information on the loan application, the client received two loans from IndyMac, $344,000 and $43,000, which the client used to purchase a residence located at 422 South Ranch Street, in Santa Maria, California.

33. According to the case agent, the property was eventually foreclosed. As a result of the sale, IndyMac sustained a loss of $227,000.

   *Client No. 4*

34. On August 18, 2006, Brewer submitted a loan application on behalf a client to Argent Mortgage, located at Orange, California, falsely stating that the client had $25,000 in her bank account at CFCU.

35. On September 12, 2006, Brewer asked CC1 to prepare a fraudulent VOD falsely stating that the client had approximately $15,000 in her bank account at CFCU. The next day, CC1 provided Brewer a fraudulent VOD falsely stating that the client had $14,987 in her bank account at CFCU.

36. Based on the false information on the loan application, the client received a loan from Argent Mortgage, $593,750, which the client used to purchase a residence located at 1646 Chadwell, in Santa Maria, California.

37. According to the case agent, the property was eventually foreclosed. As a result of the sale, Argent Mortgage sustained a loss of $316,932.

   *Client No. 5*

38. On November 9, 2006, Brewer asked CC1 to prepare a fraudulent VOD falsely stating that a client had over $8,500 in their bank account at CFCU. On the same date, CC1 provided Brewer a fraudulent VOD falsely stating that the client had over $10,437 in their bank account at CFCU.

39. On November 20, 2006, Brewer submitted a loan application on behalf of the client to Central Coast One Stop Mortgage Group, Inc, located in Santa Maria, California, falsely stating that the client had $10,437 in their bank account at CFCU.

40. Based on the false information on the loan application, the client received two loans from Central Coast One Stop Mortgage Group, $408,000, and 102,000, which the client used to purchase a residence located at 735 W. Rainer Way, in Santa Maria, California.

41. According to the case agent, the property was eventually foreclosed. As a result of the sale, Central Coast One Stop Mortgage Group sustained a loss of $255,000.

**Victim Impact**

42. According to the case agent, due to loans that Brewer prepared fraudulently the following California properties have eventually foreclosed. As a result of the sale, the following lenders sustained an actual loss:

| *Lender[1]* | *Loss Amt.* | *Property Address* |
|---|---|---|
| Alliance Bancorp[2] | $ 243,000 | 436 E. Taylor, Santa Maria |
| Federal Home Loan Mortgage Corp. | $ 255,000 | 735 W. Rainer Way, Santa Maria |
| FDIC or One West Bank | $ 227,000 | 422 South Ranch Street, Santa Maria |
| JPMorgan Chase | $ 316,932 | 1646 Chadwell, Santa Maria |
| FDIC or One West Bank | $ 324,000 | 2530 Laurie Way, Arroyo Grande |
| FDIC or One West Bank | $ 290,000 | 603 West Edwards Street, Santa Maria |
| Total Actual Loss | $1,655,932 | |

**Adjustment for Obstruction of Justice**

43. The Probation Officer has no information suggesting that the defendant impeded or obstructed justice.

**Adjustment for Acceptance of Responsibility**

44. On January 5, 2012, in the presence of counsel the Probation Officer interviewed Brewer at the United States Probation Office in Los Angeles, California. On the advice of counsel, Brewer did not discuss the instant offense but indicated that she is in agreement with the factual basis in the plea agreement.

---

[1]According to the case agent the following lenders have been taken over: Central Coast One Stop Mortgage Group was taken over by Federal Home loan Mortgage Corporation; Argent Mortgage was taken over by JPMorgan Chase; and IndyMac was taken over by FDIC; however, FDIC is splitting the loss with One West Bank.

[2]According to the case agent, Alliance Bancorp went bankrupt and the sale of this bank was handled by trustee California Reconveyance Corp., which would need to go through a legal process to identify the victim.

**Offense Level Computation**

45. In United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the Supreme Court determined that the district courts, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Accordingly, the Probation Officer calculated the advisory sentencing range using the Guidelines Manual in effect on November 1, 2011.

46. In determining the offense level, the Probation Officer is instructed by the Relevant Conduct Guideline at U.S.S.G. § 1B1.3(a), and the commentary at Application Note 2. This guideline and commentary hold the defendant accountable for his own behavior, as well as the actions of others committed in furtherance of the jointly undertaken criminal activity, with the exception of the conduct of others that was not reasonably foreseeable to the defendant.

47. Base Offense Level: The guideline for a violation of 18 U.S.C. §371: Conspiracy, is U.S.S.G. § 2X1.1, which directs that the base offense level be determined by the base offense level from the guideline for the underlying offense. In this case, the guideline for the underlying offense of conspiracy to commit loan fraud and wire fraud is U.S.S.G. § 2B1.1. Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level is 6. **6**

48. Specific Offense Characteristics: Pursuant to U.S.S.G. § 2B1.1(b)(1), if loss exceeds $5,000, the offense level is increased by the amount of loss.

49. Pursuant to Application Note 3(A), loss is the greater of actual loss or intended loss. Further, pursuant to Application Note 3(C), the court need only make a reasonable estimate of the loss. According to the case agent, Brewer's conduct caused actual losses totaling $1,655,932. Furthermore, in the plea agreement, Brewer agreed that the "applicable restitution falls somewhere between $1 million and $2.5 million." Accordingly, pursuant to U.S.S.G. § 2B1.1(b)(1)(I) imposes a 16-level increase if the loss is more than $1,000,000 and not more than $2,500,000, a 16-level increase is applied. **+16**

50. Victim-Related Adjustments: None. **0**

51. Adjustment for Role in the Offense: U.S.S.G. §§ 3B1.1 and 3B1.2 provide for adjustments based on a defendant's aggravating or mitigating role. U.S.S.G. § 3B1.1 provides an increase if the defendant was an organizer, leader, manager, or supervisor of a criminal activity. U.S.S.G. § 3B1.2 provides for a role reduction to a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant. Based upon the evidence provided by the Government, Brewer was an average participant. As such, neither a role increase or reduction is warranted. **0**

52. Adjustment for Obstruction of Justice: None. **0**

53. Adjusted Offense Level: 22. **22**

54. Adjustment for Acceptance of Responsibility: The defendant has pleaded guilty and has stipulated to the factual basis in the Plea Agreement. Therefore, a two-level reduction for acceptance of responsibility has been applied pursuant to U.S.S.G. § 3E1.1(a). The additional one-level reduction applies, pursuant to U.S.S.G. § 3E1.1(b), upon motion of the Government stating that defendant timely notified authorities of his intention to enter a guilty plea, and provided the adjusted offense level prior to operation of subsection (a), is level 16 or greater.   **-3**

55. Total Offense Level: 19.   **19**

56. Chapter Four Enhancements: None.   **0**

57. Total Offense Level: 19.   **19**

### Offense Behavior Not Part of Relevant Conduct

58. None.

### PART B.  THE DEFENDANT'S CRIMINAL HISTORY

59. Pursuant to United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the Court should consider the following criminal history category calculation to be advisory.

60. A criminal record inquiry was conducted through the Justice Data Interface Controller System (JDIC) which accesses several databases on the county, state and national level. Arrest records and court records were requested or obtained from the following additional sources: the Chula Vista Municipal Court, and the Chula Vista Police Department.

### Criminal Convictions

| Date Arrest/ Referred | Charge/Agency | Date Sentence Imposed/Disp. | Guideline Score |
|---|---|---|---|
| 61. 06-27-92 | 484/488 PC: Petty theft, misd. (Ct. 2); Chula Vista Muni. Crt.; Case No. S70777 | 07-30-92: 2 yrs. prob. | 4A1.2 (e) (3)  **0** |

62. The court records and police report were destroyed. Count 1, charging burglary, was dismissed. No further information is available.

### Criminal History Computation

63. Brewer has no criminal history points.   **0**

64. According to the Sentencing Table (Chapter 5, Part A), zero to one criminal history point establishes a criminal history category of I.

**Other Criminal Conduct**

65.   None.

**Pending Charges**

66.   None.

**Other Arrests**

67.   None.

**PART C.  OFFENDER CHARACTERISTICS**

68.   The Bureau of Immigration and Customs Enforcement (ICE) has verified that Brewer is residing legally within the United States as a permanent resident. Her Alien Registration number (ARN) is 019346076. According to ICE, "if this person has been convicted for a felony offense, this person may be amenable to removal proceedings for violations of the Immigration Act."

69.   The following information was obtained from Brewer during a presentence interview conducted on January 5, 2012. The information was verified by her aunt, Imelda Sanchez, who can be reached at (619) 470-1217.

**Personal and Family Data**

70.   Brewer was born on August 14, 1973, in Tepic, Nayarit, Mexico. (Verified by birth certificate.)

71.   Brewer' parents are Raul Brewer and Ana Brewer Salazar. Her father passed away of a heart attack when she was either 3 or 4 years old. Her mother who is 67 years old, is a homemaker. Brewer indicated that throughout the year, her mother travels and spends time with family in San Diego and Mexico. However, she also resides with Brewer for long periods of time.

72.   Brewer has the following siblings who share the Brewer surname, and reside in Nayarit, Mexico: Mariana, age 43, who is an English teacher; Angelica, age 42, who is a homemaker; and Raul, age 40, who owns an auto parts store.

73.   In 1973, Brewer was brought to the United States and became a permanent resident. She grew up in Chula Vista, California, with her aunts: Irma and Graciela Brewer. She explained that her mother constantly traveled back and forth from Mexico to Chula Vista since her mother had her business in Mexico and her children in Chula Vista.  She indicated that at times she felt "lonely" because her mother was not with her all the time.

74.   Brewer has resided in the following California cities: Los Angeles, San Luis Obispo, Arroyo Grande, and Santa Maria.

11

75. Brewer has no marital history. However for approximately 12 years, she lived with Jose Ortiz, who is the father of her two daughters Vanessa, age 13, and Noemi Ortiz, age 9. She broke up with her boyfriend because he was aggressive towards her. After he drank alcohol, he would slap, push and spit at Brewer.

76. Brewer recalled that her boyfriend's personality changed after his mother died in a 1996 vehicle accident. Brewer explained that she and her daughters were with her boyfriend and his mother driving in Mexico when they suffered the fatal car accident. Brewer suffered a pelvis fracture and multiple wounds on her back.

77. In 2008, Brewer left her boyfriend and she has full custody of her two daughters. She currently resides at 2411 Divide Way in Santa Maria, California, with her daughters and sometimes her mother.

78. Brewer also has the following family members residing with her: her nephew Omar Gudea, age 19, who is a pastry chef; and her three nieces who are students, Alejandra Brewer, age 17, Carolina Rodriguez, age 16, and Samantha Brewer, age 14.

79. If Brewer is incarcerated for the instant offense, she would like her mother to take care of her daughters.

Home Visit

80. On October 7, 2011, Pretrial Service conducted a home visit of Brewer's residence and observed the following: Brewer resides in a four-bedroom, and two and a half-bathroom, one story house, which is located in a middle class neighborhood. Her rent is $1,550 per month. The residence was neat and clean and the furniture was appropriate for the residence. There is an unattached garage which has one bedroom and a half bathroom. Her nephew resides in the garage. Brewer has a dog.

**Physical Condition**

81. Brewer is 5'2" tall, weighs 155 pounds, and has brown hair and brown eyes. She reported no tattoos.

82. Brewer reported multiple scars on her back due to the vehicle accident in 1996 and a scar on her abdomen due to a tummy tuck in 2002.

**Mental and Emotional Health**

83. During the interview with the Probation Officer, the defendant displayed no obvious signs of psychological dysfunction.

84. In approximately 2008, Brewer and her daughters met with a church counselor for two years after she separated from her boyfriend. She indicated that she and her daughters are doing better and do not need further help.

**Substance Abuse**

85.  Brewer indicated she has no history of alcohol or drug abuse.

**Education and Vocational Skills**

86.  In 1992, Brewer graduated from Hilltop High School, in Chula Vista. (Verified by diploma.)

87.  In 1992, Brewer attended Southwestern College, in Chula Vista. (Verification requested and pending.)

88.  In 1996, Brewer attended Cuesta College, in San Luis Obispo. (Verification requested and pending.)

89.  In 2002, Brewer obtained her real estate license. It is due to expire in March 2013. (Verified by license.)

90.  In 2011, Brewer attended Allan Hancock College, in Santa Maria. (Verification requested and pending.)

91.  Brewer indicated that she is currently not attending school because she is extremely busy with work, and taking care of her daughters, nieces and nephew. However, she would like to be an accountant.

**Employment**

92.  From 2004 to 2008, Brewer was employed at Capital Mortgage Services in Santa Maria, as a loan officer. The instant offense arose from this employment.

93.  From 2008 to 2010, Brewer was employed at New Alliance Realty in Santa Maria, as a realtor, earning an average monthly salary of $1,700. Her earnings was based solely on commission. She left this employment to go to Hacienda Realty. (Verified by the 1099 form.)

94.  From 2010 to present, Brewer is employed at Hacienda Realty in Santa Maria, as a realtor, earning an average monthly salary of $1,000. Her earnings is solely on commission. (Verified by pay stubs.)

95.  From August 2011, Brewer is employed at Community Health Centers in Santa Maria, as a receptionist, earning $1,896 per month. She works full-time, Monday through Friday, 8:00 a.m. to 5:00 p.m., and sometimes on Saturdays. (Verified by pay stubs.)

**Military Service**

96.  None.

**Financial Condition: Ability to Pay**

97. The following information was obtained from the Personal Financial Statement (PFS), signed by the defendant; and a search of public records, via Lexis.

98. Brewer has been supplied with General Order 03-01, which mandates certain financial disclosures to the Probation Officer. She has complied with the provisions of this Order.

**Assets**:

| | |
|---|---:|
| Cash | $ 90 |
| Unencumbered Assets | $ 0 |
| Equity in Other Assets | $ 0 |
| Total Assets: | $ 90 |

**Unsecured Debts**: $ 0

**Net Worth**: $ 90

**Monthly Cash Flow**:

| | |
|---|---:|
| Income | $ 3,726[3] |
| Necessary Living Expenses | $ 3,375 |
| Net Monthly Cash Flow: | $ 351 |

**Assessment of Financial Condition**

99. Brewer's cash assets consists of an individual Chase checking account with a balance of $90.00.

100. In 2008, Brewer purchased a 2005 Toyota Camry. However, the vehicle is under her ex-boyfriend's sister's name, Angelica Ortiz. (Verified by the vehicle registration.) Brewer has been making the monthly payments of $274. She indicated that she should be done paying in approximately 2013. Since the vehicle is not under Brewer's name, this was not listed as an unencumbered asset.

101. Brewer indicated that she is in the process of filing for bankruptcy.

---

[3]The income consists of her salary as a receptionist ($1,734), her real estate commission ($1,500), child support ($42), and her nephew's payment for food and rent ($450). Brewer also receives $900 from two of her nieces Angelica and Samatha for food and rent. This amount was not included in the income because currently her nieces are in Mexico vacationing and Brewer is not receiving this income. They are expected back in Mid-January 2012.

102. The above cash flow analysis does not include gym membership and entertainment expenses reported by Brewer, as they are not considered necessary according to the Administrative Office of the United States Courts. See <u>Monograph 114: Criminal Monetary Penalties</u>: Chapter IV, Page 15.

103. Brewer provided copies of her income tax returns:

   a. For the 2008 tax year, she filed an individual tax return and her adjusted gross income (AGI) was $14,127.

   b. For the 2009 tax year, she filed an individual tax return and her AGI was $13,541.

   c. For the 2010 tax year, she filed an individual tax return and her AGI was $15,513.

### Assessment of Ability to Pay

104. Based on the Brewer limited assets, it does not appear that he has the ability to pay an immediate fine in addition to making restitution payments.

105. Immediate Payment: None.

106. Payment Schedule: Restitution shall be due during the period of imprisonment, at the rate of not less than $25 per quarter, and pursuant to the Bureau of Prison's Inmate Financial Responsibility Program. If any amount of restitution remains unpaid after release from custody, monthly installments of at least 10 percent of Brewer's gross monthly income, but not less than $300.00, whichever is greater, shall be made during the period of supervised release, and shall begin 30 days after commencement of supervision.

## PART D. SENTENCING OPTIONS

107. Pursuant to <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738 (2005), the Court should consider the following guideline provisions to be advisory.

108. The guideline sentencing range, as determined by the Probation Officer, results in the various sentencing options described below, which could include the following options, unless otherwise prohibited by law: (1) straight probation; (2) straight imprisonment; (3) a probationary sentence that includes community confinement or home detention as a condition; or (4) a sentence of imprisonment followed by a term of supervised release that includes community confinement or home detention as a condition.

**CUSTODY**

| | | |
|---|---|---|
| 109. | Guideline Provisions: | <u>TOTAL OFFENSE LEVEL</u>: 19<br><u>CRIMINAL HISTORY CATEGORY</u>: I<br><u>SENTENCING RANGE</u>: 30 to 37 Months |
| 110. | Statutory Provisions: | 5 years maximum per count; 18 U.S.C. § 371; (Count 1), Class D Felony. |

**IMPACT OF PLEA AGREEMENT**

111.  None.

**SUPERVISED RELEASE**

| | | |
|---|---|---|
| 112. | Guideline Provisions: | Required if imprisonment is over one year or if statute mandates. U.S.S.G. § 5D1.1(a).<br><br>1 year minimum, 3 years maximum (Count 1). U.S.S.G. § 5D1.2(a)(2). |

113.  When imposing a sentence of imprisonment, the Court can also include, as a condition of supervised release, a condition requiring confinement at a community corrections center, participation in a home confinement program, or a combination of both. In assessing the propriety and duration of community confinement and/or home detention, the Court should also consider the sentencing factors enumerated at 18 U.S.C. § 3553(a). Advisory input regarding the use of these options can be found at U.S.S.G. §§ 5C1.1, 5F1.1 and 5F1.2.

| | | |
|---|---|---|
| 114. | Statutory Provisions: | 3 years maximum (Count 1), 18 U.S.C. § 3583(b)(2). |

**PROBATION**

| | | |
|---|---|---|
| 115. | Guideline Provisions: | Not provided for under Zone D of the Sentencing Table, U.S.S.G. § 5B1.1, Application Note 2. |

116.  Unless probation is precluded by statute, the Court can include, as part of a sentence of probation, a condition requiring confinement at a community corrections center, participation in a home confinement program, or a combination of both. In assessing the propriety and duration of community confinement and/or home detention, the Court should consider the sentencing factors enumerated at 18 U.S.C. § 3553(a). Advisory input regarding the use of these options can be found at U.S.S.G. §§ 5B1.1, 5F1.1 and 5F1.2.

| | | |
|---|---|---|
| 117. | Statutory Provisions: | 1 year minimum, 5 years maximum (Count 1), 18 U.S.C. § 3561(c)(1). |

**FINES**

118.  Guideline Provisions:   Application of U.S.S.G. § 5E1.2 results in a fine range of $6,000 to $60,000.

119.  United States Sentencing Guideline Section 5E1.2(a) and (e) advise that the Court impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay, or that a fine would unduly burden his dependents.

120.  Statutory Provisions   $250,000 maximum per count; 18 U.S.C. § 3571(b)(3); Count 1.

   $100 mandatory special assessment. 18 U.S.C. § 3013.

121.  Pursuant to 18 U.S.C. § 3572(d), the order for a fine must establish the manner in which and the schedule according to which the fine is to be paid. The interest due on fines is addressed at 18 U.S.C. § 3612(f).

122.  Pursuant to 18 U.S.C. § 3572(a)(6) and U.S.S.G. § 5E1.2(d)(7) among the factors the court shall consider in determining the amount of a fine are the expected costs to the government of any term of imprisonment, supervised release, or probation. During fiscal year 2010 the monthly per capita costs were $2,357.01 for prison facilities, $2,153.22 for community corrections confinement, and $328.20 for supervision.

**RESTITUTION**

123.  Guideline Provisions: Restitution is addressed by the provisions of U.S.S.G. § 5E1.1.

124.  Statutory Provisions: Restitution is applicable pursuant to 18 U.S.C. § 3663A(a)(3), which is part of the April 24, 1996 amendment to the Victim/Witness Protection Act.

125.  Pursuant to 18 U.S.C. § 3664(f)(2) and 18 U.S.C. § 3572(d), the order for restitution must establish the manner in which and the schedule according to which restitution is to be paid. A restitution order may direct nominal payments pursuant to the provisions of 18 U.S.C. § 3664(f)(3)(B). A payment schedule may be adjusted due to a material change in the defendant's economic circumstances pursuant to 18 U.S.C. § 3664(k). The interest due on restitution is addressed at 18 U.S.C. § 3612(f).

126. Restitution is applicable as follows:

| Victim | Amount |
|---|---|
| Alliance Bancorp[4] | $ 243,000 |
| Federal Home Loan Mortgage Corp. | $ 255,000 |
| FDIC or One West Bank | $ 841,000 |
| JPMorgan Chase | $ 316,932 |
| Total | $1,655,932 |

**PART E.  FACTORS THAT MAY WARRANT DEPARTURE**

127. The Probation Officer has not identified any factors that would warrant a recommendation for a departure from the advisory guideline range.

**PART F.  FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE THE ADVISORY GUIDELINES SYSTEM**

128. The Probation Officer has not identified any factors that would warrant a recommendation for a variance outside the advisory guideline range.

Respectfully submitted,

MICHELLE A. CAREY
Chief U. S. Probation Officer

MAYTEE ZENDEJAS
U. S. Probation Officer
213-894-5597

Reviewed and Approved:

STEVEN YUNG
Supervisor
213-894-3460

MZ:mz
1/4/2012

G:\COMMON\DOCS\T88\BREWER_JANETH_127868_PSG_PSR.WPD

---

[4]According to the case agent, Alliance Bancorp went bankrupt and the sale of this property was handled by trustee California Reconveyance Corp., which would need to go through a legal process to identify the victim.